UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                 :
**PETER DePAULO,** :
                 :
            Plaintiff, :   **MEMORANDUM**
                 :   **DECISION AND ORDER**
     - against - :
                 :   19-CV-4804 (AMD)
**ANDREW SAUL,** :
                 :
            Defendant. :
                 :
------------------------------------------------------------ X

**ANN M. DONNELLY,** United States District Judge:

The plaintiff challenges the Social Security Commissioner's decision that the claimant, his sister,[1] was not disabled for the purposes of receiving Social Security Disability Insurance ("SSDI") under Title II of the Social Security Act. On March 9, 2020, the plaintiff moved for judgment on the pleadings. (ECF No. 10.) On June 8, 2020, the defendant filed a cross-motion for judgment on the pleadings. (ECF No. 14.) For the reasons explained below, I grant the plaintiff's motion in part, deny the defendant's motion and remand the case for further proceedings.

## BACKGROUND

1. <u>Statutory and Regulatory Framework</u>

The Social Security Act directs that the Commissioner "immediately redetermine" a claimant's eligibility for benefits "if there is reason to believe that fraud or similar fault was involved in the application." 42 U.S.C. § 405(u)(1)(A). The statute further instructs the Commissioner that "[w]hen redetermining the entitlement," she "shall disregard any evidence if

---

[1] The claimant passed away on June 15, 2015, while a redetermination of her benefits was pending. (Tr. 17.) Her brother substituted for her in this proceeding. (Tr. 17, 100.)

there is reason to believe that fraud or similar fault was involved in the providing of such evidence." § 405(u)(1)(B). If, pursuant to a redetermination, the Commissioner concludes there is insufficient evidence of the claimant's entitlement to benefits, the Commissioner "may terminate such entitlement and may treat benefits paid on the basis of such insufficient evidence as overpayments." § 405(u)(3).

The SSA promulgated regulations to implement § 405(u)'s mandate. Those regulations, which are outlined in the Hearings, Appeals, and Litigation Law Manual ("HALLEX"), contemplate that the SSA may be required to redetermine a claimant's benefits under three circumstances: (i) when it receives information "from the Office of Inspector General" ("OIG"), (ii) when it receives information "from a federal or state prosecutor," or (iii) when it "uncover[s] information in the course of processing or reviewing a case(s) that provides a reason to believe that fraud or similar fault was involved in the application for benefits." HALLEX I-1-3-25(A). According to the HALLEX procedures, "adjudicators do not have discretion to reconsider the issue of whether the identified evidence should be disregarded when based on an OIG referral or information or a referral based on information obtained during a criminal or other law enforcement investigation." HALLEX I-1-3-25(C)(4)(a). By contrast, "when the redetermination is based solely on an SSA finding of fraud or similar fault, an adjudicator can consider a beneficiary's or recipient's objection to the disregarding of certain evidence." *Id.*

2. Factual and Procedural Background

On May 6, 1997, Frances DePaulo applied for disability insurance, citing disability beginning March 13, 1996 due to depression and hearing loss in her left ear. (Tr. 166.) Attorney Raymond Lavallee helped the claimant submit her application (*see* Tr. 37-38), which also

included treating records and forms completed by Dr. Raymond Pierre-Paul, a psychiatrist (*see, e.g.*, Tr. 186, 289-90). The SSA granted Ms. DePaulo's application on July 10, 1997. (Tr. 30.)

In a letter dated February 25, 2014, an assistant district attorney from the New York County District Attorney's office ("DA") updated the Commissioner on an ongoing fraud investigation, and included the following description:

> Raymond Lavallee, working together with [others], referred SSDI applicants to psychiatrists Dr. Edward Sodaro and Dr. Raymond Pierre-Paul . . . in order to fabricate a psychiatric disability prior to their applying for SSDI. Lavallee and his co-conspirators further assisted applicants with completing paperwork that contained false statements regarding their activities of daily living, and coached applicants about how to behave during Consultative Examinations, ALJ hearings, and treatment sessions with pre-designated doctors. . . . [A]pplicants paid cash kick-backs to Lavallee and his co-conspirators over and above the authorized representative fee.

(Tr. 53.) The letter also listed applicants whose applications, according to the DA's investigation, "follow[ed] some of the patterns described and consequently may have obtained SSDI benefits under fraudulent pretenses." (Tr. 54.) The claimant was included in this list. (ECF No. 15-1 ¶¶ 3-5.)

In a May 6, 2014 letter, the Commissioner notified the claimant that the SSA was suspending her disability insurance "while we redetermine whether you were entitled to benefits on 07/10/97, the date we initially allowed your claim," "because we believe that fraud or similar fault was involved in providing evidence that we used to find you disabled." (Tr. 73.) The Commissioner further explained that criminal charges had been filed against Raymond Lavallee and others, and that "[o]ne or more of these sources provided evidence in your case that we used to find you disabled." (*Id.*)

The claimant submitted a request for reconsideration (Tr. 79), which the disability examiner denied in a determination dated July 1, 2015 (Tr. 84-97). In that determination, the

3

disability examiner disregarded medical evidence that Dr. Pierre-Paul submitted, as well as medical evidence from Mr. Lavallee.  (Tr. 92.)  The examiner also disregarded the claimant's activities of daily living because they were "based on a mental condition in part or in whole on the claimant's allegations."  (*Id.*)  On redetermination, the disability examiner invoked the findings of consulting physicians, and concluded that the claimant's hearing loss formed a "moderate impairment" that "precludes work in high ambient noise environments or where good hearing is essential to job performance or safety."  (Tr. 97.)  The examiner also concluded that without the excluded evidence, there was "insufficient evidence to rate the mental impairment severity," and that "a finding of not disabled" was appropriate given the claimant's "age, education, and PRFC."  (*Id.*)

The plaintiff requested a hearing (Tr. 102), which took place before ALJ Black-Pennington on September 18, 2018 (Tr. 151).  Before the hearing, the plaintiff submitted additional evidence—the claimant's "complete medical record[s]," to support the application.  (Tr. 275.)[2]  The ALJ denied the plaintiff's application in a decision dated October 18, 2018.  (Tr. 14-26.)  The ALJ excluded "evidence regarding a mental impairment, submitted by [Mr. Lavallee]," as well as medical evidence from Dr. Pierre-Paul, in accordance with § 405(u) and the corresponding SSA regulations.  (Tr. 17.)  The plaintiff was not given an opportunity to challenge the exclusion of this evidence.  The ALJ "considered all remaining evidence that relates to the period on or before the original allowance date"—July 10, 1997—including hearing testimony from the claimant's brother and a vocational expert.  (Tr. 17-18.)

The ALJ made the following conclusions:

---

[2] In addition to what had been submitted in support of the claimant's initial application, and before the initial redetermination decision, these records included treatment notes, including 2004 notes from Dr. Frederic Vagnini, a cardiologist.  (Tr. 1134-35.)

4

First: the claimant did not engage in substantial gainful activity between March 13, 1996 (the alleged date of onset) and July 10, 1997.  (Tr. 20.)

Second: the claimant had only one severe medically determinable impairment: unilateral hearing loss.  (*Id.*)  The ALJ based this finding on the various medical reports and examinations detailing the claimant's "profound hearing loss in the left ear."  (*Id.*)  The ALJ found insufficient evidence that the claimant's other physical conditions or her mental health issues constituted medically determinable impairments during the relevant period.  The ALJ "note[d]" that although the claimant had a "history of sarcoidosis, chronic fatigue syndrome, fibromyalgia and disc disease," there was "no evidence that these disorders were manifest during the period at issue."  (Tr. 20-21.)  While treating physicians wrote letters in 2014 stating that the claimant had suffered from fibromyalgia and chronic fatigue syndrome, they did not provide contemporaneous reports or notes, or otherwise specify the dates on which these diagnoses were made.  (Tr. 21.)  The ALJ likewise found "no treating records [related to anxiety or depression] from any medical source who was not a participant in the fraudulent scheme," and thus, no evidence that the claimant suffered from anxiety or depression during the relevant period.  (*Id.*)

Third: the claimant did not suffer a list-level impairment because she retained "normal hearing" and "100% speech discrimination" in her right ear.  (*Id.*)

Fourth: the claimant had "the residual functional capacity to perform a full range of work at all exertional levels," with the non-exertional limit that her work environment have "no more than a low to moderate noise level" and permit her to avoid "unprotected heights, vibrations, balancing and heavy moving mechanical parts."  (*Id.*)  The ALJ based this determination on the findings of treating and consulting physicians.  (Tr. 22.)  The ALJ also considered the symptoms alleged to arise from the claimant's other physical and mental health conditions and found

5

"limited substantive support" for them. (Tr. 22-23.) In particular, she noted that "[a]ll records related to psychiatric problems" were from discredited sources, that there was no evidence that fibromyalgia was diagnosed or treated during the relevant period, and that the claimant was not diagnosed with sarcoidosis until after the relevant period. (Tr. 23.) The ALJ also cited testimony from the claimant's brother that the claimant walked without a cane or assistive device notwithstanding her bouts of dizziness. (Tr. 23.)

Fifth: there were jobs "in significant numbers" in the national economy that the claimant could have performed, even though she could no longer do her past relevant work as a New York City police detective. (Tr. 24-25.) According to the vocational expert, someone with the claimant's background and non-exertional limitations could be a hand packager, laundry worker or parking lot attendant, for example. (Tr. 25.) There are almost 1 million jobs in the national economy falling into these three categories. (*Id.*) Thus, the ALJ determined that the claimant was not "disabled" within the meaning of the Social Security Act during the relevant period. (Tr. 26.)

The plaintiff timely requested a review of the ALJ's decision. (Tr. 154-165.) In a letter dated June 18, 2019, the Appeals Council informed the plaintiff that it had "denied [the plaintiff's] request for review." (Tr. 8.)

## STANDARD OF REVIEW

A district court reviewing the Commissioner's final decision is limited to determining "whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)). The district court must uphold the Commissioner's factual findings if there is substantial evidence in the record to

support them. 42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). When the Commissioner's determination is supported by substantial evidence, "the decision must be upheld, even if there also is substantial evidence for the plaintiff's position." *Cerqueira v. Colvin*, No. 14-CV-1134, 2015 WL 4656626, at *11 (E.D.N.Y. Aug. 5, 2015) (internal quotation marks omitted). A district judge may not "substitute [her] own judgment for that of the [ALJ]," even if she would have made a different decision. *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991).

"Although factual findings by the Commissioner are 'binding' when 'supported by substantial evidence,'" the Court will not defer to the ALJ's determination "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)) (alteration in original). Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).

**DISCUSSION**

The plaintiff makes multiple challenges to the proceedings below.  He argues that the ALJ did not develop the administrative record, did not follow the treating physician rule and erred in her assessment of the claimant's credibility.  The plaintiff also challenges the ALJ's determination that the claimant's impairments were not severe and that the claimant did not meet or equal the Commissioner's listing, 12.06 (anxiety).  The plaintiff additionally faults the ALJ's RFC analysis, claiming that the ALJ did not properly evaluate the claimant's hearing loss or consider the claimant's non-severe impairments.

The plaintiff also challenges the ALJ's decision on procedural due process and Administrative Procedure Act ("APA") grounds.  He claims that he could not challenge the ALJ's exclusion of evidence, which violated Fifth Amendment procedural due process.  He also argues that the redetermination process violated the APA because it did not meet formal adjudication requirements.  In addition, he objects to the HALLEX procedure—which permits the ALJ to reconsider whether evidence should be disregarded only when that determination was made by the SSA, not if it was based on an OIG referral or a referral based on a criminal or other law enforcement investigation—as "arbitrary and capricious."

The defendant responds that the ALJ's conclusions were supported by substantial evidence.  The defendant also refutes the plaintiff's constitutional and statutory challenges.

As explained below, the Court does not address the plaintiff's constitutional and statutory claims because the Court finds that the plaintiff's other challenges provide sufficient grounds on which to grant his motion and remand this action.

**I.      Administrative Record**

Dr. Susan Levine and Dr. Kam Poon, internists who treated the claimant, submitted letters describing their treatment history with her.  In a letter dated May 30, 2014, Dr. Levine explained that she first saw the claimant in the "late 90's for evaluation and treatment of [] [c]hronic [f]atigue [s]yndrome," and that the claimant was "also [] diagnosed with [f]ibromyalgia," as well as "secondary anxiety and insomnia." (Tr. 1239.)  In a May 30, 2014 letter, Dr. Poon reported that the claimant had "been under [his] medical care since 1993," that she had "a history of hearing loss, fibromyalgia, anxiety, depression and panic attacks," that her "chronic fatigue syndrome caused her to have muscle pain, insomnia, and decreased mental activities," and that she "had diffuse muscle pain due to fibromyalgia." (Tr. 1241.)

The ALJ determined that both doctors' opinions were of "no probative value." (Tr. 23-24.)  The ALJ "note[d]" the claimant's "history of . . . chronic fatigue syndrome [and] fibromyalgia[,]" but found "no evidence that these disorders were manifest during the period at issue."  (Tr. 20-21.)  The ALJ further observed that "although treating sources indicate that the claimant suffered from anxiety and depression," that diagnosis was not supported by any contemporaneous treating records, precise treatment dates or laboratory or diagnostic records. (Tr. 21, 23-24.)  Accordingly, the ALJ determined that the claimant's impairments were not medically determinable impairments ("MDIs") and did not include them in determining the claimant's RFC.  (Tr. 23.)[3]

When there are gaps in the administrative record, ALJs have "an affirmative obligation to develop [it;] even when the claimant is represented by counsel." *Perez v. Chater*, 77 F.3d 41, 47

---

[3] Dr. Yeager and Dr. Spitz, medical consultants, reported that the claimant suffered unilateral hearing loss but had no exertional limitations, and that she was capable of working in environments that did not have high ambient noise levels. (Tr. 24)  The ALJ determined that these opinions were of "some probative value, since they are consistent with the clinical evidence and diagnostic studies of record." (*Id.*)

9

(2d Cir. 1996) (citation omitted). The ALJ did not have the benefit of contemporaneous treating records, or at the very least more detailed retrospective information from either of the claimant's treating physicians. *See Rodriguez v. Astrue*, No. 07-CV-534, 2009 WL 637154, at \*17-20 (S.D.N.Y. Mar. 9, 2009) (remanding because ALJ did not fill gaps in the evidentiary record). On remand, the ALJ should obtain additional information from Dr. Levine and Dr. Poon and consider whether those records change her conclusion.

## II. Treating Physician Rule

The treating physician rule requires the ALJ to give a treating physician's opinion "controlling weight" if it is "well-supported by medically acceptable clinical laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2). "[I]f the ALJ decides the opinion is not entitled to controlling weight, [she] must determine how much weight, if any, to give it." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). When the ALJ does not give a treating physician's opinion controlling weight, she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). Moreover, "the ALJ must explicitly consider, *inter alia*, (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); 20 C.F.R. § 404.1527(c)(1)-(6). If the ALJ does not explicitly consider these factors the case must be remanded unless "a searching review of the record" makes it clear that the ALJ applied "the substance of the treating physician rule." *Estrella*, 925 F.3d at 96 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

Dr. Kramer treated the plaintiff for hearing loss from 1995 to 1999. (Tr. 441-58.) He opined that the claimant had unilateral deafness which limited her ability to localize the origin of sound and to communicate in noisy environments. (Tr. 442, 444.) He also reported that "stimulation to the left [ear] at superthreshold levels w[as] perceived as painful," and that the claimant's hearing loss was a "100% impairment on the left." (Tr. 442.) These findings were supported by medical documentation. (*See, e.g.*, Tr. 333-36.) The ALJ determined that Dr. Kramer's opinion was of "considerable probative value." (Tr. 24.) But it is not clear whether "considerable probative value" is a synonym for "controlling weight," or if it is something else. On remand, the ALJ should clarify the weight that she assigns to Dr. Kramer's opinion. *Snell v. Apfel*, 177 F.3d 128, 133-34 (2d Cir. 1999) (ALJ's failure to provide "good reasons" for the weight assigned to a treating physician's opinion is a ground for remand).

## III. RFC

The plaintiff faults the ALJ for not considering the claimant's non-hearing loss conditions in determining the claimant's RFC. (ECF No. 11 at 28.) But this was improper only if those conditions were established as MDIs. On remand, and after completing the record, the ALJ should determine whether the claimant had MDIs in addition to her hearing loss, and if necessary, consider them in her RFC analysis.

In addition to the limitations the ALJ's RFC included—work environments with low to moderate noise levels and work that would not require unprotected heights, vibrations, balancing and heavy moving mechanical parts (Tr. 21)—the plaintiff argues that the ALJ should have also considered the report by Carol A. Smith, a speech-language pathologist who examined the plaintiff on November 1, 1996 (Tr. 371). SSR 06-03p[4] provides that although information from

---

[4] SSR 06-03p was rescinded in 2017, and does not apply to claims filed on or after March 27, 2017. 82 Fed. Reg. 15263 (Mar. 27, 2017).

sources other than "acceptable medical sources" cannot be used to establish an MDI, it can be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." 71 Fed. Reg. 45593 (Aug. 9, 2006). Ms. Smith reported that the claimant's ability to understand speech is "adversely affected by . . . distance from the speaker and the rate of presentation," and that the claimant "would have difficulty comprehending when: the speaker does not have her attention; the speaker does not face her; the speaker is in another room; there are more than two people speaking; the topic shifts rapidly; the speaker talks rapidly; background noise is present; [and if she] attends lectures and meetings." (Tr. 372.) On remand, the ALJ should consider whether Ms. Smith's report affects the RFC determination.

## IV.    Evaluation of Subjective Symptoms[5]

If a plaintiff's allegations are not supported by "objective medical evidence, the ALJ must engage in a[n evaluation of subjective symptoms]." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). "In making a[n evaluation of subjective symptoms], the ALJ must consider seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of [the] claimant's pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) any treatment, other than medication, the claimant has received; (6) any other measures the claimant employs to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of pain or other symptoms." *Gallagher v. Colvin*, 243 F. Supp. 3d 299, 306-07 (E.D.N.Y. 2017) (citing 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii), 416.929(c)(3)). An ALJ's evaluation of subjective

---

[5] SSR 16-3p eliminated the use of the term "credibility" from the agency's sub-regulatory policy, and "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." 82 Fed. Reg. 49462 (Oct. 25, 2017). The relevant regulations remain unchanged.

symptoms "must contain specific reasons for the finding . . . , supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Atwater v. Astrue*, No. 10-CV-420, 2012 WL 28265, at *6 (W.D.N.Y. Jan. 5, 2012), *aff'd*, 512 F. App'x 67 (2d Cir. 2013).

In evaluating the claimant's RFC, the ALJ concluded that "the claimant's statements concerning intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 23.) However, the ALJ did not discuss the seven factors or explain why the claimant's statements were inconsistent with the record. Thus, remand is appropriate. *See Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013) (finding legal error when the ALJ did not explicitly refer to or discuss any of the factors for evaluating subjective symptoms). On remand, the ALJ should make a specific evaluation of subjective symptoms and identify any inconsistencies between the claimant's statements and the rest of the record.

**V.  Step Two Analysis**

The plaintiff challenges the ALJ's conclusion at step two that there was "no evidence" of sarcoidosis, chronic fatigue syndrome or fibromyalgia during the relevant period. (Tr. 20-21.) He asserts, without citing any evidence, that these conditions "are well-documented in the record, caused years of ongoing problems requiring treatment, medications, and functional limitations." (ECF No. 11 at 20.) Thus, the plaintiff contends, the conditions are "severe" and the ALJ should have considered them at steps three through five. (*Id.*) But as the ALJ explained, the existing record did not include supporting treating and diagnostic records.

13

The plaintiff also claims that the ALJ should have considered whether the claimant's mental health impairments were severe. (ECF No. 11 at 18.) In fact, the record before the ALJ did not establish that the claimant's alleged mental impairment was an MDI. The plaintiff argues that his September 18, 2018 hearing testimony, information from doctors Poon, Levine, Visconti, DePalo, Bernshteyn and Kramer, and from CEs Stockton and Cohen, constituted non-excluded evidence of the claimant's mental impairment. (*Id.* at 19; ECF No. 18 at 14.) The plaintiff's testimony cannot establish an MDI because he is not an "accepted medical source." 20 C.F.R. §§ 404.1502, 404.1521. And, the ALJ disregarded CE Stockton's report because it was based on excluded evidence. (Tr. 412-15.) The remaining sources do not support the plaintiff's claims.

The doctors' statements that the plaintiff cites do not establish what the plaintiff claims. Although those sources reported that the claimant had been diagnosed with (or was reported to suffer from) anxiety, they did not include corroborating or contemporaneous treatment or diagnostic records. Specifically, Dr. Poon cited the claimant's history of "anxiety, depression and panic attacks" in a 2014 letter, but did not provide any corroborating treatment notes or records. (Tr. 1241.) Dr. Levine likewise reported in a 2014 letter that her review of records from the claimant's treating physician "chronicle[d] [the claimant's] continuing symptoms of . . . secondary anxiety and insomnia; and cognitive disturbances which have continued over the last 15 years," but did not provide the records she reviewed. (Tr. 1239.) Dr. Visconti, in a note dated June 4, 2014, simply stated that the claimant "has a diagnosis of . . . anxiety," but did not provide more detail. (Tr. 1238.) In a letter dated March 25, 2002, Dr. DePalo stated that the claimant reported "night sweats and depression," but did not say that he treated these ailments, or if he did, whether it was during the relevant period. (Tr. 987-89.) Similarly, Dr. Bernshteyn wrote a 2014 letter that stated only that the claimant "suffers from numerous medical conditions

14

including . . . [a]nxiety and [p]anic [a]ttacks," but did not state that he treated her for these conditions during the relevant period. (Tr. 1267.) Dr. Kramer, in a June 30, 1999 letter, stated that the claimant "complains of anxiety and panic attacks" and takes "diazapan PRN for anxiety," but he did not diagnose the claimant with these conditions or treat her for them. (Tr. 444.) Finally, in his report, consultative examiner Dr. Cohen, who examined the claimant in 1999, referred to the claimant's report that she had a history of anxiety and depression, but did not specify when these impairments were diagnosed or include additional detail about them. (Tr. 435.) Thus, the existing record does not establish anxiety as an MDI.

Nevertheless, as noted earlier, the ALJ should make efforts to complete the record, and then reevaluate whether the complete administrative record establishes additional MDIs.

## VI. Step Five Analysis

The plaintiff also challenges the ALJ's step five analysis. The vocational expert testified that someone with the RFC the ALJ proposed would be limited to jobs with a noise level of three or less, and identified three such jobs: hand packager, laundry worker and parking lot attendant. (Tr. 25, 1717-18.) In fact, the jobs of hand packager and parking lot attendant have designated noise levels of 4. *See* SCO, App'x D, Part A, Environmental Conditions (N), available at https://www.obflegal.com/httpdocs/files/SCO.pdf. However, because one job—laundry worker—fits the noise level requirements, *id.*, and "207,000 of these jobs exist" in the national economy (Tr. 1715), the ALJ's step five conclusion is correct. *Cf. Akey v. Astrue*, 467 F. App'x 15, 17 (2d Cir. 2012) (finding the "ALJ's failure to include the limitation to unskilled and semi-skilled work" harmless where "the only jobs the vocational expert identified were unskilled or semi-skilled.").

15

## CONCLUSION

Accordingly, for the reasons set forth above, the plaintiff's motion for judgment on the pleadings is granted in part, and the defendant's motion is denied. The case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

                                                                          s/Ann M. Donnelly
                                                              ANN M. DONNELLY
                                                              United States District Judge

Dated: Brooklyn, New York
       March 30, 2021